# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-3428

FRANKLIN GILL, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 27, 2012                                    Decided October 28, 2013)

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *R. Edward Bates*, of Naperville, Illinois, was on the brief for the appellant.

*Michael J. A. Klein*, with whom *Will A. Gunn,* General Counsel, *R. Randall Campbell*, Assistant General Counsel, *Leslie C. Rogall*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and DAVIS and PIETSCH, *Judges.*

KASOLD, *Chief Judge*: Veteran Franklin Gill appeals through counsel that part of a September 11, 2012, decision of the Board of Veterans' Appeals (Board) that denied entitlement to an initial disability rating higher than 10% for his service-connected hypertension.[1] Mr. Gill argues that the record medical evidence was inadequate for Board decision because the record did not contain examination reports recording two or more blood pressure readings on at least three different days, which he contends is required by 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101 Note (1) (2013), to determine an appropriate disability rating. The Secretary argues that the multiple blood pressure readings required by Note (1) apply only with regard to an initial confirmation of a diagnosis of hypertension, and not to the assignment of a disability rating. Because this appeal

---

[1] Mr. Gill does not present any argument with respect to other matters in the Board decision. To the extent the other matters may have been on appeal, they are abandoned and will not be addressed. *See Johnson v. Shinseki*, 26 Vet.App. 237, 239, 248 (2013) (en banc) (holding that "the Court need not address the Board decision with respect to [ ] matters" that were not argued on appeal, and affirming only the Board's "decision regarding the matters before the Court").

involves a regulatory interpretation of first impression, panel decision is warranted. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the reasons stated below, that part of the decision that is on appeal will be affirmed.

## I. FACTS

On April 3, 2003, Mr. Gill filed a claim to reopen a December 1994 regional office (RO) decision that denied service connection for hypertension. Although the RO did not reopen the claim, the Board did so in a May 19, 2008, decision that also granted service connection. In September 2008, the RO implemented the May 2008 Board decision by (1) awarding benefits for hypertension effective April 3, 2003, and (2) assigning a 10% disability rating for hypertension. Mr. Gill then appealed to the Board for a higher disability rating and his claim was remanded by the Board in February 2011 "to afford [Mr. Gill] an appropriate VA examination." Record (R.) at 118. Mr. Gill was provided a VA examination on May 17, 2011. The examination report reflects a current blood pressure reading of 130/65[2] and lists three blood pressure readings under a heading "Blood Pressure Measurements for Established Diagnosis of Hypertension": 130/65; 126/78; 124/80.[3] *See* R. at 222.

In the decision on appeal, the Board found that a higher disability rating was not warranted. In doing so, the Board determined that the May 2011 examination report (1) adequately discussed Mr. Gill's reported symptoms and blood pressure readings, and (2) substantially complied with the February 2011 remand order. In support of its decision that a higher disability rating was not warranted, the Board noted that Mr. Gill had numerous blood pressure readings throughout the rating period and none of them reflected a diastolic pressure of 110 or more, or a systolic pressure of 200 or more, as required for a disability rating higher than 10%, *see* DC 7101 (e.g., providing a 20% disability rating when "[d]iastolic pressure [is] predominantly 110 or more, or; systolic pressure [is] predominantly 200 or more"). The Board also noted, inter alia, that (1) the highest blood pressure reading in Mr. Gill's medical records reflects a diastolic pressure of 96 and a systolic pressure of 150, and further noted that even these readings appeared to be abnormally high when compared with the

---

[2] The top number represents the systolic pressure measurement and the bottom the diastolic pressure.

[3] It appears that these measurements were taken the date of the examination.

numerous other readings in the record, and (2) Mr. Gill had not reported any readings greater than those reflected in his medical records.

## II. THE PARTIES' ARGUMENTS

Mr. Gill argues that once the February 2011 Board ordered a hypertension examination the Secretary was required to give him an examination that included two or more blood pressure readings on at least three different days, as he contends is required by DC 7101 Note (1). More specifically, he argues that the plain wording of Note (1) – along with its location in the rating schedule – requires that these readings be taken before a disability rating for hypertension can be assigned. He further argues that, to the extent there may be ambiguity in Note (1), the Secretary's comments in the December 11, 1997, Agency Final Rule for the "Schedule for Rating Disabilities; The Cardiovascular System," 62 Fed. Reg. 65,207-01 (Dec. 11, 1997), reflect the Secretary's contemporaneous interpretation that two or more blood pressure readings are to be taken on at least three different days to warrant assignment of a disability rating for hypertension.

Mr. Gill further argues that, because the May 2011 examination did not comport with the requirements of his view of Note (1), the Secretary violated his duty to provide an adequate examination. *See Barr v. Nicholson*, 21 Vet.App. 303, 12 (2007) (when Secretary undertakes to provide a medical examination, even if not required by law, Board must ensure the examination is adequate).

The Secretary argues that the plain language of Note (1) applies only to the initial confirmation of a diagnosis of hypertension, not to the assignment of a disability rating. He contends that the location of Note (1) in the rating schedule is not dispositive because numerous other DCs provide specific definitions for diagnoses. He further contends that, assuming Note (1) is deemed ambiguous, his December 1997 explanation of the change in regulation, *see* 62 Fed. Reg. 65,207-01, and VA Form 21-0960A-3 (a disability benefits questionnaire (DBQ) used for hypertension) support the conclusion that Note (1) applies only to confirmation of a diagnosis of hypertension and not to disability rating determinations. He argues that pursuant to *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997), *Smith v. Nicholson*, 451 F.3d 1344, 1349-50 (Fed. Cir. 2006), and *Camacho v. Nicholson*, 21 Vet.App. 360, 363 (2007), the Court must pay substantial deference to this interpretation.

Further, the Secretary argues that, because Mr. Gill's arguments are based on a flawed reading of DC 7101, the Board's denial of a disability rating higher than 10% for hypertension should be affirmed.

## III. ANALYSIS

### A. Interpretation of DC 7101 Note (1)

The "interpretation of a . . . regulation is a question of law" that we "review de novo." *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003). The starting point in interpreting a regulation is its plain language, for if the meaning of the regulation is clear from its language, that is the "end of the matter." *Tropf v. Nicholson*, 20 Vet. App. 317, 320 (2006) (quoting *Gardner v. Brown*, 5 F.3d 1456, 1458 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994)). While the plain wording of the regulation controls its interpretation, words generally are not to be read in isolation; rather, they should be read in context of the regulatory scheme. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (noting that "[t]he meaning – or ambiguity – of certain words or phrases may only become evident when placed in context"); *cf. Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) (noting that "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").

If the meaning of a regulation is unclear from the language, the Court should defer to the Secretary's interpretation of his own regulation so long as it is not inconsistent with the language of the regulation or otherwise plainly erroneous. *Smith*, 451 F.3d at 1349 (citing *Auer*, 519 U.S. at 461-62); *Mason v. Shinseki*, 26 Vet.App. 1, 6 (2012); *Tatum v. Shinseki*, 24 Vet.App. 139, 142 (2010). Indeed, the Secretary's interpretation of his own regulations is entitled to substantial deference. *See Smith*, 451 F.3d at 1349-51 (deference warranted where there was "no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question"); *see also Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1364 (Fed. Cir. 2005) (substantial "deference is due to an agency interpretation of its own regulations even when that interpretation is offered in the very litigation in which the argument in favor of deference is made").

We begin with the language of DC 7101, which provides:

Diastolic pressure predominantly 130 or more...................................................60%

4

Diastolic pressure predominantly 120 or more.....................................................40%

Diastolic pressure predominantly 110 or more, or; systolic pressure predominantly 200 or more......................................................................................................20%

Diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control.....................................................................................................10%

Note (1): Hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. For purposes of this section, the term hypertension means that the diastolic blood pressure is predominantly 90mm. or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160mm. or greater with a diastolic blood pressure of less than 90mm.[4]

Focusing on Note (1), it states that hypertension must be confirmed by at least two blood pressure readings taken over several days, and it defines hypertension in terms of a specified level of predominate blood pressure readings. Standing alone, the plain language of Note (1) says nothing about a disability rating. On the other hand, Note (1) does not stand alone; it is part of DC 7101, which provides varying disability ratings based on the predominant diastolic and systolic blood pressure readings, with the number of readings required for a disability rating not otherwise specified, unless specified by Note (1). Although the Secretary correctly notes that an individual could have hypertension as defined in Note (1), but not be entitled to a 10% or higher disability rating, this observation does not answer whether the Note (1) requirements for confirming hypertension are also applicable – or inapposite – for assigning an appropriate disability rating, which is dependent on a claimant having hypertension with predominate diastolic and systolic blood pressure readings at specified levels. Accordingly, we examine whether the Secretary's current interpretation of Note (1) – i.e., that it applies only to the initial diagnosis of hypertension – reflects his considered judgment.

In support of his current interpretation, the Secretary references the explanation he provided when promulgating the changes to Note (1) in 1997, specifically, the comment that

> standard medical texts recommend multiple blood pressure readings *for the diagnosis of hypertension* . . . . We have revised the note to require that hypertension be confirmed by readings taken two or more

---

[4] DC 7101 contains two other notes not at issue in this appeal.

times on each of at least three different days. This will assure that the existence of hypertension is not conceded based solely on readings taken on a single, perhaps unrepresentative, day.

62 Fed. Reg. at 65,215 (emphasis added). Although there is no explicit limitation in this sentence to an *initial diagnosis* of hypertension, the focus on confirming the existence of hypertension supports the Secretary's general view on appeal that the specified number of readings applies only to the confirmation of the existence of hypertension, as opposed to the level of hypertension necessary for a particular disability rating.

We also note that the explanation further states that the changes to Note (1) were to "assure more consistent ratings [based on] objective and quantifiable criteria whenever possible," and "[w]e proposed to revise the note to state that careful and repeated measurements of blood pressure readings are required prior to the assignment of any compensable evaluation." 62 Fed. Reg. at 65,207, 65,215. Taken alone, this part of the explanation can lead to a conclusion that the specified blood pressure readings in the amended Note (1) are "required prior to the assignment of any compensable evaluation." However, no such specificity with regard to disability ratings actually was added to Note (1), and, read as a whole, the explanation of the changes made to Note (1) refers to the need for "careful and repeated" blood pressure readings before a compensable rating is assigned, and specifies the exact number of blood pressure readings required only when addressing the need to confirm the existence of hypertension. Otherwise stated, the explanation, read as a whole, does not mandate the interpretation of Note (1) proffered by Mr. Gill, but instead supports the Secretary's interpretation.

The Secretary also points to the DBQ for hypertension, which explicitly requires two readings over three days for confirmation of the initial diagnosis of hypertension, and three readings – on presumably any date – if a veteran was diagnosed previously with hypertension. Although this form went into effect in October 2012, a month after the Board decision now on appeal, it supports the Secretary's current interpretation that the regulation requires two blood pressure readings over three or more days only to confirm the existence of hypertension. That interpretation supports the Secretary's interpretation on appeal of the scope of Note (1), which also is consistent with the explanation he offered when Note (1) was modified in 1997. Mr. Gill fails to demonstrate that the

6

Secretary's interpretation has varied at any time during the adjudication of his claim by the Secretary and the Board. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal).

Overall, we find the Secretary's interpretation on appeal of Note (1) to DC 7101 to be consistent with his explanation at the time Note (1) was modified and to reflect his considered judgment as to the need for a specified number of blood pressure readings over multiple days to confirm hypertension. We therefore defer to his interpretation and hold that the multiple blood pressure readings to be taken over multiple days as specified in Note (1) of DC 7101 applies only to confirming the existence of hypertension.

## B. Adequacy of Examination

In the context of our holding above, we now review whether the Board clearly erred in finding that the May 2011 examination report substantially complied with its earlier remand order and otherwise was adequate, along with the other record medical reports, for Board decision. To be adequate, a medical examination must describe the disability in sufficient detail so that the Board's "'evaluation of the claimed disability will be a fully informed one.'" *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (quoting *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991)); *see Acevedo v. Shinseki*, 25 Vet.App. 286, 294 (2012) (noting that medical reports "must be read as a whole" in determinations of adequacy); *Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007) (requiring a medical opinion to "support[] its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). "Whether a medical opinion is adequate is a finding of fact which this Court reviews under the 'clearly erroneous' standard of review." *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008).

The May 2011 examination report reflects three blood pressure readings that appear to have been taken on one day. Although, standing alone, these blood pressure readings might be sufficient to constitute the "careful and repeated" readings the Secretary explained (when promulgating the 1997 changes to DC 7101) were needed to determine the predominate blood pressure required under DC 7101 for assigning consistent disability ratings, we need not decide such a narrow issue. This is because Board decisions are to be based on the entire record, and, here, the Board did not rely on only these three readings for its decision. 38 U.S.C. § 7104(a) ("Decisions of the Board shall be

7

based on the entire record in the proceeding and upon consideration of all evidence . . . ."); *McClendon v. Nicholson*, 20 Vet.App. 79, 84 (2006) (Secretary need not provide additional medical evidence if there is sufficient medical evidence to decide the claim); *Gabrielson v. Brown*, 7 Vet.App. 36, 40 (1994) (noting that a medical opinion is "only that, an opinion" providing medical evidence).

As the Board correctly found, the record contains numerous blood pressure readings over multiple years, none of which support a disability rating over 10%, including the May 2011 examination blood pressure readings. The Board also noted that Mr. Gill did not report any blood pressure readings greater than those readings contained in the record. Moreover, the 2011 Board remand order did not specify what an adequate or appropriate VA examination would be, and the same Board member who issued the 2011 Board remand order also issued the decision on appeal and found the May 2011 examination report substantially compliant with his earlier remand order. In the absence of some specific definition of what constitutes an "appropriate examination," and because the record contains numerous blood pressure readings taken over multiple years through the May 2011 medical report – none of which warrant a disability rating higher than 10% – we do not find clear error in the Board's finding that the May 2011 examination report complied substantially with the 2011 Board remand order such that the report, along with the other record medical reports, was adequate for rating purposes. *See* 38 U.S.C. § 7104(a); *D'Aries*, *supra*; *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("A finding is clearly erroneous when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (internal quotation marks omitted)); *see also Palczewski v. Nicholson*, 21 Vet.App. 174, 180 (2007) (mere passage of time, as opposed to evidence or allegation of a worsening disability, does not warrant provision of new medical examination); *Dyment v. West*, 13 Vet.App. 141, 146–47 (1999) (requiring substantial compliance with Board remand orders).

## IV. CONCLUSION

Upon consideration of the foregoing, that part of the Board's September 11, 2012, decision that is on appeal is AFFIRMED.