# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1543

BARRY C. WITHERS, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 4, 2017                                      Decided August 10, 2018)

*Barbara J. Cook*, of Cincinnati, Ohio, with whom *Olayiwola O. Oduyingbo*, of Providence, Rhode Island, was on the brief, for the appellant.

*Shannon E. Leahy*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Carolyn F. Washington*, Deputy Chief Counsel; and *Jelani A. Freeman*, Appellate Attorney, were on the brief, all of Washington, D.C., for the appellee.

Before DAVIS, *Chief Judge*, and MEREDITH and TOTH, *Judges*.

TOTH, *Judge*: Under VA regulations, a veteran may receive a total disability rating based on individual unemployability (TDIU) when "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a) (2018). Although the regulation specifies many factors to be considered as part of a TDIU analysis, whether a veteran can perform "sedentary work" or "sedentary employment" is not among them. In fact, neither term nor any similar phrase is mentioned, much less defined, in any relevant VA statute or regulation. Yet, when a veteran undergoes a VA examination and TDIU is at issue, it is not uncommon for the Court to see cases in which a VA examiner opines on whether that veteran is capable of sedentary work and the Board singles out the examiner's comments about sedentary employment as decisive on whether to award TDIU. This is what happened to Barry C. Withers, whose appeal of a March 2016 Board decision denying TDIU is currently before the Court. The Board didn't explain what it thought the phrase sedentary work meant, and the parties dispute its meaning and import in the TDIU context.

VA has not proposed, and this Court has never adopted an interpretation of § 4.16, that a veteran's ability "to secure or follow a substantially gainful occupation" is determined solely or

primarily by the veteran's ability to perform sedentary work. Given sufficient reasoning, the ability to perform various forms of work can be a relevant consideration, but it's up to the Board to explain how such a conclusion coheres with § 4.16—that is, how an examiner's description of a veteran's specific functional limitations supports the Board's conclusion that the veteran is not unable to secure or follow a substantially gainful occupation consistent with his education, training, and work history. Here, the Board relied on the examiners' determinations that Mr. Withers was capable of sedentary employment but never explained the connection between these conclusions and the medical and vocational evidence of record. This is not sufficient and so we remand for the Board to provide adequate reasons and bases for its decision. In so ruling, we decline invitations from both sides to define the term "sedentary employment" because, at present, the term has no independent legal significance but, as used in this case, was merely the conclusion of an expert medical witness based on particular facts of the case.

## I. BACKGROUND

Mr. Withers served in the Marine Corps between 1968 and 1969 and was wounded in combat in Vietnam. He currently receives disability compensation for several service-connected conditions, including gunshot wound residuals to the right arm and leg, lower back problems, and post-traumatic stress disorder (PTSD).

In 2005, he applied for TDIU. For more than two decades he had operated a franchise of a financial services and investment firm. He managed an office of more than 30 people and oversaw everything from exterior maintenance and ordering supplies to training and educating employees. Starting in 2004, however, he began missing work because of physical complications arising from his service-connected disabilities and PTSD-related problems. He remained in his management position for a while but stopped working in August 2004 and officially ended his employment in December of that year.

The veteran underwent VA examinations in connection with his TDIU claim. His PTSD evaluation—together with a private examination report he submitted—reflected complaints of depression and fatigue, as well as difficulty interacting with people and handling stress. With respect to his back disability, Mr. Withers reported that he could walk slowly for only 10 to 15 minutes and avoided heavy lifting; the examiner found objective evidence of pain and limitation of motion of the lumbosacral spine but no additional loss of motion, fatigue, incoordination, or

2

lack of endurance upon repetitive use. The veteran endorsed similar limitations with respect to his right leg disabilities, and that same examiner found evidence of residual pain and some limitation of motion in the right knee, as well as limited right ankle motion. The regional office denied TDIU, and Mr. Withers appealed.

Meanwhile, in 2008, the Social Security Administration (SSA) determined that the veteran suffered from severe physical and mental impairments as a result of his service-connected osteomyelitis and PTSD, and awarded Mr. Withers disability insurance benefits, effective June 2004. The SSA determined that he had "the residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except that the claimant is unable to perform competitive work on a full-time basis." R. at 1248.

In 2010, the Board remanded the TDIU claim for an opinion as to whether service-connected disability or disabilities precluded gainful employment. In the first of a series of VA opinions, an examiner found decreased range of motion in the right ankle, some right wrist disability, and degenerative changes of the lumbosacral spine, and noted that records showed no significant psychiatric symptoms. The examiner concluded that the veteran was "unable to do any kind of strenuous or sustained work" but should "be able to do light work or sedentary work." R. at 713. He adhered to that conclusion the following year but advised that he couldn't offer an opinion on the effects of PTSD.

A year later, another VA examiner observed decreased coordination, weakness, and fatigability in the veteran's right leg, with loss of sensation in the inner thigh and around the ankle and foot. R. at 656-71 (full exam). Significant occupational effects were denoted, such as decreased mobility, problems lifting and carrying, and difficulty with prolonged standing or walking. Specifically, standing was limited to 15 to 30 minutes and walking was limited to between ¼ to 1 mile. In the examiner's judgment, right leg disabilities prevented strenuous work but permitted the veteran to perform "sedentary work" consistent with his job history of sales and management. The examiner also noted that the veteran was able to spend "several hours a day refinishing and buil[d]ing furniture." R. at 658.

Regarding PTSD, a 2012 examiner opined that Mr. Withers experienced depression, anxiety, difficulty concentrating, and other mild or transient symptoms that led to occupational and social impairment that decreased work efficiency and ability to perform occupational tasks only during periods of significant stress. Overall, the examiner thought that some PTSD symptoms

3

"could be associated with decreased work efficiency in an occupational setting, regardless of whether the work involves physical or sedentary tasks." R. at 654. Finally, in a 2016 VA PTSD evaluation, the examiner indicated that the condition produced occasional decreases in work efficiency and intermittent periods of inability to perform occupational tasks; however, the veteran was generally able to function satisfactorily, with normal routine behavior, self-care, and conversation.

In the 2016 decision on appeal, the Board denied TDIU. It relied in part on the fact that "none of the VA examiners concluded that the veteran's service-connected disabilities precluded him from limited or sedentary employment" and that his college education and three-decade history as a sales manager "strongly suggest that he has the training to perform sedentary employment." R. at 15; *see also* R. at 16 (concluding that the veteran was incapable of "strenuous work" but capable of "sedentary or light duty employment"[1]). This appeal followed.

## II. ANALYSIS

### A.

Although VA generally compensates veterans for service-connected disability or disabilities based on its rating schedule reflecting average impairment in earning capacity, it recognizes that such disabilities may render a veteran unemployable even though the schedular requirements for a 100% rating haven't been met. *Todd v. McDonald*, 27 Vet.App. 79, 85-86 (2014). In those circumstances, TDIU is available. To determine whether it is warranted in a given case, VA conducts a holistic and individualized assessment of the veteran. *See id.* at 85. The regulation lists several factors that should be considered or disregarded when making this assessment:

> [T]he existence or degree of nonservice-connected disabilities or previous unemployability status will be disregarded where the percentages referred to in this paragraph for the service-connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities render the veteran unemployable. Marginal employment shall not be considered substantially gainful employment. For purposes of this section, marginal employment generally shall be deemed to exist when a veteran's earned annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the

---

[1] Although the Board said examinations indicated the veteran was "*in*capable of sedentary or light duty employment," R. at 16 (emphasis added), it is apparent from the parties' arguments and the record that this was a typographical error.

poverty threshold for one person. Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination.

38 C.F.R. § 4.16(a). When conducting a TDIU analysis, the Board "must take into account the individual veteran's education, training, and work history." *Pederson v. McDonald*, 27 Vet.App. 276, 286 (2015) (en banc). We have addressed some of these factors and the Board's obligation to consider them in several cases. *E.g.*, *Cantrell v. Shulkin*, 28 Vet.App. 382 (2017) (meaning of "in a protected environment"); *Ortiz-Valles v. McDonald*, 28 Vet.App. 65 (2016) (meaning of "marginal employment"); *Gleicher v. Derwinski*, 2 Vet.App. 26 (1991) (educational and occupational history).

As is evident from the regulation's text, the concept of sedentary work is not mentioned; in fact, we've been unable to find it in any relevant VA statute or regulation.[2] Yet, use of the term in the TDIU context is pervasive in cases that come to the Court.[3] VA examiners employ it when opining on the extent of veterans' physical and mental limitations, and those opinions become part of the evidence the Board considers and relies on when adjudicating entitlement to TDIU.[4] In some cases, there has been, if not a precise understanding of the term, general acceptance of what is implied by it. *See, e.g.*, *Pederson*, 27 Vet.App. at 287 ("Although the appellant disputes whether his employment and educational background allow him to qualify for sedentary work, the appellant does not argue that he is physically or mentally unable to perform sedentary work."); *id*. at 288 ("There is also no dispute that the appellant is physically able to perform sedentary work."). In

---

[2] The word "sedentary" appears in only a single VA regulation, 38 C.F.R. § 4.115a, which pertains to dysfunctions of the genitourinary system.

[3] This may be due to VA's *Adjudication Procedures Manual*, the M21-1, which advises that, although VA examiners should not opine on whether veterans are "unemployable," examiners may "comment regarding what kind of work tasks or work environments (if any), to include *employment that is sedentary in nature* and employment requiring physical labor," veterans can perform despite service-connected disabilities. Part IV, sbpt. ii, ch. 2, sec. F.2.d (emphasis added). The italicized language first appeared in July 24, 2015, changes to this portion of the M21-1, but its origins are unclear. In any event, neither this provision nor any other in the M21-1 explicates sedentary employment.

[4] *See, e.g.*, *Brown v. Shulkin*, No. 16-2480, 2017 WL 4772845 (Vet. App. Oct. 23, 2017); *Huff v. Shulkin*, No. 16-0322, 2017 WL 1506227 (Vet. App. Apr. 27, 2017); *Johnson v. Shulkin*, No. 15-4621, 2017 WL 836256 (Vet. App. Mar. 3, 2017); *Emmett v. McDonald*, No. 15-1511, 2016 WL 4258419 (Vet. App. Aug. 12, 2016); *Reece v. McDonald*, No. 15-0679, 2016 WL 3540981 (Vet. App. June 29, 2016).

other cases, such as this one, veterans have argued that a more definite meaning of the phrase is necessary for proper adjudication of their TDIU claims.

VA has never forwarded, nor has this Court developed through precedential decisions, an interpretation of § 4.16 that accords dispositive significance to a veteran's ability to perform sedentary work. This sets up the central tension in this case: the parties urge the Court to define a term that has no independent legal significance. For this reason, to define the phrase would put the cart before the proverbial horse. The threshold question in this context is not what "sedentary employment" means, but what connection sedentary employment bears to the requirements of § 4.16.

Mr. Withers contends that the Board simply reiterated the examiners' conclusions that he could do sedentary work without explaining the concept in light of his specific physical and psychological limitations. Asserting that the Board must use "objective measurements," he notes the detailed and technical definition of sedentary work adopted by SSA and essentially argues that—although the Secretary wasn't bound to adopt SSA's definition—the Board should have explained why SSA's criteria weren't a persuasive reason for finding him incapable of sedentary work. In response, the Secretary proposed that, since he has not articulated a definition for "sedentary employment," the phrase should be given its ordinary meaning as reflected in dictionaries, namely, employment marked by or requiring much sitting. This definition, he maintained, is consistent with how the phrase was used by the VA examiners and the Board here and suffices to explain why the Board denied TDIU. In turn, Mr. Withers tweaked an earlier position and asserts that the Court should order the Secretary to adopt SSA's definition of sedentary work until the Secretary promulgates his own comprehensive set of vocationally-based definitions.

### B.

The Board must explain its assessment of evidence central to its decision so that the claimant can understand the "precise basis" for the Board's determinations and this Court can effectively review them. *Frost v. Shulkin*, 29 Vet.App. 131, 139 (2017). It's true that § 4.16 doesn't explicitly list the concept of sedentary work as a TDIU consideration, but it was made a central issue here by the VA opinions. And though the Board relied on these opinions, it didn't explain how it interpreted the examiners' use of the term.

The Secretary argues that we can presume that VA examiners used the word sedentary in accordance with its ordinary meaning, which means that we can also presume this is how the Board

understood and used it, and therefore that the Board needn't have further explained the matter. This is an invocation of the ordinary-meaning canon, which says that, absent reason to think otherwise, courts "should assume the contextually appropriate ordinary meanings" of words. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 70 (2012). While applied most often in the context of interpreting statutes and regulations, this canon governs "all other legal instruments," such as wills and contracts. *Id*. at 69.

However, invoking this canon here isn't proper or useful. *First*, the ordinary-meaning rule applies to legal instruments, but that's not what a VA examination report is. Legal instruments establish or define specific rights or entitlements. BLACK'S LAW DICTIONARY 869 (9th ed. 2009). The ordinary-meaning canon obtains when the word or phrase at issue has independent legal significance or effect, as it does in the case of a statute, regulation, contract, will, or patent claim. On the other hand, an examination report is evidentiary, not legal, in nature. It memorializes an examiner's observations and opinions on specific medical questions in a particular case. *See* 38 C.F.R. §§ 4.1, 4.10 (2018) (describing examiners' responsibilities).

As such, the Secretary's reliance on *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994), is misplaced because, although the Board may rely on an examination report to reach a legal conclusion, the report itself is not a legal document that requires interpretation. The Court has noted in numerous cases that examiners provide evidence; they are not permitted to opine on legal or adjudicative matters.[5] Moreover, the Secretary hasn't cited any authority that has relied on this canon to discern the meaning of a word used by an expert witness—which is what VA examiners are, *see Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 302 (2008) (VA medical examiners are "nothing more or less than expert witnesses" who provide opinions on medical matters)—or in a document of record when that meaning is not clear from the evidence itself. Nor has the Secretary offered any reason to think that such reliance would be proper.

*Second*, even if applying the canon in this manner were appropriate, its usefulness in the TDIU context is unclear. "It is well established in our caselaw that determining entitlement to TDIU requires an individualized assessment of each veteran to determine whether he or she is 'in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities.'" *Todd*, 27 Vet.App. at 85 (quoting § 4.16(a)). VA

---

[5] *See, e.g.*, *Floore v. Shinseki*, 26 Vet.App. 376, 381 (2013); *D'Aries v. Peake*, 22 Vet.App. 97, 106 (2008); *Sizemore v. Principi*, 18 Vet.App. 264, 275 (2004).

recognizes that, because "ability to overcome the handicap of disability varies widely among individuals," it's necessary to give "full consideration . . . to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability[,] and to the effect of combinations of disability." 38 C.F.R. § 4.15 (2018). But the word "sedentary," although clearly having the general sense of sitting, has numerous definitions conveying that sense to varying degrees. Among the definitions quoted by the Secretary, sedentary can mean "requiring or marked by much sitting," "sitting habitually," "staying in one area," "involving little exercise or physical activity," and "characterized by much sitting and little physical exercise." Secy's Supp. Mem. at 2-3 & n.1.

Given these varying meanings, an examiner's use of the phrase "sedentary work," by itself, doesn't remove all ambiguities about what the phrase might mean in a given case. And vagueness is especially unhelpful when it comes to TDIU, where individualized assessment is crucial. Does it mean that a veteran can work any job as long as it allows for *a lot* of sitting? Only a job that entails sitting *most* of the time? A job that is restricted to mostly sitting *and* does not require much or any physical activity? As the veteran notes, although both can be described as sedentary work, there is an appreciable difference between the physical demands of a truck driver and a computer programmer. Moreover, the Secretary does not explain how work that involves mostly sitting would account for a veteran's non-physical limitations. Of course, context is key and the specific sense of "sedentary employment" can become clear based on the remainder of an examination report. Yet, if such contextual, semantic analysis is necessary in each case, then reliance on the ordinary-meaning canon when analyzing examination reports serves little useful purpose. "Different examiners, at different times, will not describe the same disability in the same language." 38 C.F.R. § 4.2 (2018). It is equally true, however, that different examiners, at different times, will describe *different* disabilities in the same language.

## C.

In short, the Secretary's proposed solution does not clear up the matter before the Court. We cannot settle the meaning of "sedentary work" as used by different VA examiners in this case or provide guidance in future cases by resort to the ordinary-meaning canon. What we can say, however, is that, where a veteran's ability to perform sedentary work is a basis for the Board's decision, the meaning of sedentary work must be determined from the particulars of the medical

8

opinion in which it is used. That is, the Board must explain this meaning—to the extent that it is not apparent from the Board's overall discussion of the opinion—as well as how the concept of sedentary work factors into the veteran's overall disability picture and vocational history, and the veteran's ability to secure or follow a substantially gainful occupation.

This approach accords with how the Board generally must assess evidence and adjudicate the issue of TDIU. We have repeatedly reiterated that a medical opinion must be read and interpreted as a whole, *e.g.*, *Gill v. Shinseki*, 26 Vet.App. 386, 391 (2013), so when an examiner uses the term sedentary work, the surrounding medical opinion may give the term its content, based on the specific functional limitations, if any, found by the examiner. When, as here, an examiner describes certain types of functional limitations and still opines that a veteran is capable of sedentary work, the Board may need to determine whether a common-sense inference can be drawn that the concept of sedentary work, as understood by the examiner, does not encompass the physical or mental acts that the veteran is incapable of performing. *See Kahana v. Shinseki*, 24 Vet.App. 428, 435 (2011) ("Drawing an inference based on the evidence is at the heart of any adjudication." (internal quotations marks omitted)).

However, before the Board can rely on an examiner's finding that a veteran is capable of sedentary work to deny TDIU, it must also ensure that the finding is consistent with the medical evidence as a whole. It's the Board's duty "to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present." 38 C.F.R. § 4.2. We have held in a similar vein that, although the Board is not obligated to obtain a single medical opinion on the combined effects of multiple service-connected disabilities for TDIU purposes, it must adequately explain how separate medical opinions of record support its decision that the disabilities do not prevent substantially gainful employment. *See Floore*, 26 Vet.App. at 382. Likewise, although § 4.16 does not make the concept of sedentary work an explicit TDIU factor, if the Board bases its denial of TDIU in part on the conclusion that a veteran is capable of sedentary work, then it must explain how it interprets that concept in the context of that case. This includes, where necessary, an explanation of how a finding that a veteran is capable of sedentary employment squares with the veteran's educational and occupational history. *See Pederson*, 27 Vet.App. at 287. In other words, the meaning of "sedentary work" is arrived at inductively with the facts cited providing the context for understanding how the observation applies in a given situation. This allows for

9

individualized assessment; absent such factual context however, the phrase can be regarded as conclusory and meaningless on its own.

## D.

Mr. Withers would have us go further. He argues that the Court should order the Secretary to adopt the definition of sedentary work appearing in the *Dictionary of Occupational Titles* (DOT), a defunct publication of the Department of Labor.[6] The DOT has been used by many Federal agencies, especially SSA. Under SSA regulations, for example, "sedentary work" entails lifting up to 10 pounds and "a certain amount of walking and standing." 20 C.F.R. § 404.1567(a) (2018); *see also* 20 C.F.R. § 404.1569a(b)-(c) (2018) (specifying various "exertional" and "non-exertional" limitations that must be considered).

We decline to order the adoption of the SSA's definition for the same reason that we decline to adopt the Secretary's proposal: the concept "sedentary work" is absent from § 4.16 and, thus, is not *necessarily* part of a proper TDIU analysis. Requiring the Secretary to adopt DOT definitions would be imposing not only a specific set of standards on VA but introducing a new adjudicatory factor. Nothing in title 38 requires VA examiners to address factors listed in SSA's regulation spelling out the concept of sedentary work, and we have never required the Board or examiners to discuss them either. *See Beaty v. Brown*, 6 Vet.App. 532, 538 (1994). The Secretary is certainly free to promulgate regulations in line with SSA's, but that's a decision for the Secretary to make and not for this Court to impose. *See Veterans Justice Grp., LLC v. Sec'y of Veterans Affairs*, 818 F.3d 1336, 1356 (Fed. Cir. 2016); *Cantrell*, 28 Vet.App. at 392-93.

## E.

Even though this is the first occasion in which the Court has articulated the proper analysis for the Board to undertake when addressing the concept of sedentary work, we think it appropriate to vacate the decision on appeal and remand for the Board to provide reasons or bases that comport with this opinion and to undertake any additional fact finding it deems necessary to accomplish that task. *See, e.g.*, *Turner v. Shulkin*, 29 Vet.App. 207, 220 (2018). Here, VA examiners opined that Mr. Withers was capable of sedentary work. However, they also remarked that service-connected physical disabilities interfered to some extent with his ability to stand, walk, lift, and

---

[6] The DOT "identified and defined more than 12,000 jobs" but was replaced in the late 1990s by the Occupational Information Network (O*NET). U.S. DEP'T OF LABOR, REVISING THE STANDARD OCCUPATIONAL CLASSIFICATION SYSTEM 3, 6 (1999), *available at* https://www.bls.gov/soc/socrpt929.pdf.

carry. It is not clear from the current decision whether the Board arrived at its own conclusion regarding the veteran's ability to perform sedentary work or simply adopted the examiners' conclusions. As noted above, the Board is not obliged to consider the standards used by SSA or the DOT, but it must sufficiently explain how it interpreted the examiners' use of the term and how the concept of sedentary work figures into a veteran's overall disability picture and vocational history.

Further compromising the Board's discussion of the sedentary employment issue is the failure to mention Mr. Withers's psychiatric disability. PTSD symptoms, such as difficulty concentrating and interacting with people, led a 2012 examiner to opine that this disability "could be associated with decreased work efficiency in an occupational setting, regardless of whether the work involves physical or sedentary tasks." R. at 654. However, the Board appeared to rely exclusively on the veteran's *physical* functional limitations when concluding that he could perform sedentary work consistent with his vocational history. R. at 15-16. On remand, the Board should clarify its assessment of the extent to which PTSD affects Mr. Withers's ability to do sedentary work. Because we are remanding on this basis, we need not address the veteran's remaining arguments for vacatur. He is free to present them and any other evidence and argument he wishes to the Board, which must consider them upon readjudication. *See Turner*, 29 Vet.App. at 220. Additionally, although Mr. Withers had argued for reversal based in part on the SSA determination that his service-connected disabilities precluded employment, remand is the appropriate remedy here because the Board failed to explain what weight, if any, it gave to the SSA decision. Thus, on remand, the Board should also evaluate this evidence in the first instance. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013).

### F.

We realize our decision does not provide the clear-cut resolution to this issue that the parties had sought. But this case highlights the limits of judicial problem-solving. With respect to the concept of sedentary work, the Secretary has asked us to recognize an objective, uniform definition that doesn't exist, and the veteran has asked us to prescribe an objective uniform standard that we don't have the power to impose. Unless the concept of sedentary work is clarified through VA's regulatory process, the meaning and relevance of the term will have to be discerned on a case-by-case basis from the medical and lay evidence presented and in light of each veteran's education, training, and work history.

Although litigation can't provide the clarity the parties seek, we note that there are alternative methods through which the Secretary and VA claimants can pursue this goal. The Secretary can instruct VA examiners whether they should avoid using the phrase sedentary work or, if the concept is relevant in a specific case, what information they must include to give adequate content to that phrase. Alternatively, the Secretary may go through notice and comment and amend § 4.16 to include formally the concept of sedentary employment and specify a definition or standard for it. 38 U.S.C. § 501(a). Conversely, veterans and their advocates may petition VA for rulemaking under 5 U.S.C. § 553(e) to include the concept of sedentary work in the TDIU regulation with a specific definition and, should the Secretary deny that petition, seek review in the Federal Circuit. *See Gray v. Sec'y of Veterans Affairs*, 875 F.3d 1102, 1109 (Fed. Cir. 2017).

In short, there are alternative legal avenues for the parties to seek the policies they advocate here, avenues through which the agency can bring its expertise to bear and the public can have a say in the process.

### III. CONCLUSION

Upon review of the parties' briefs, the record, and the governing law, the March 24, 2016, Board decision is VACATED and the matter REMANDED for additional development, if necessary, and readjudication consistent with this decision.