Citation Nr: AXXXXXXXX
Decision Date: 07/30/21 Archive Date: 07/30/21

DOCKET NO. 210323-147651
DATE: July 30, 2021

ORDER

Service connection for sleep-disturbed breathing, to include obstructive sleep apnea (OSA), as secondary to the service-connected posttraumatic stress disorder (PTSD), is granted.

Service connection for hypertension is granted.

Service connection for peripheral edema, left lower extremity, is granted.

Service connection for peripheral edema, right lower extremity, is granted.

Service connection for peripheral neuropathy, left upper extremity, is denied.

Service connection for peripheral neuropathy, right upper extremity, is denied.

Service connection for peripheral neuropathy, left lower extremity, is denied.

Service connection for peripheral neuropathy, right lower extremity, is denied.

REMANDED

A total disability rating based on individual unemployability due to service-connected disabilities (TDIU).

FINDINGS OF FACT

1. The weight of the evidence supports finding that the Veteran's sleep-disturbed breathing is due to his service-connected PTSD. 

2. The weight of the evidence supports finding that the Veteran's hypertension initially arose during service and is now related to the service-connected PTSD and exposure to Agent Orange. 

3. The weight of the evidence supports finding that the Veteran's service-connected OSA is the cause of the bilateral lower extremity edema. 

4. The preponderance of the evidence of record is against finding that the Veteran has had peripheral neuropathy of the left upper, right upper, left lower, or right lower extremity at any time during or approximate to the pendency of the claim.

CONCLUSIONS OF LAW

1. The criteria for service connection for sleep-disturbed breathing, to include OSA, have been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

2. The criteria for service connection for hypertension have been met. 38 U.S.C. §§ 1110, 1116, 1131; 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310. 

3. The criteria for service connection for edema, left lower extremity, have been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

4. The criteria for service connection for edema, right lower extremity, have been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

5. The criteria for service connection for peripheral neuropathy, left upper extremity, have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

6. The criteria for service connection for peripheral neuropathy, right upper extremity, have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

7. The criteria for service connection for peripheral neuropathy, left lower extremity, have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

8. The criteria for service connection for peripheral neuropathy, right lower extremity, have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from May 1959 to May 1979. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for the Veterans dissatisfied with the VA's decisions on their claims and seeking reviews of those decisions on or after February 19, 2019.

In October 2019, VA received the Veteran's VA Form 21-526EZ. The Veteran sought a TDIU, increased ratings for hearing loss, and service connection claims for PTSD, OSA, bilateral upper and lower extremity peripheral neuropathy, bilateral lower extremity edema, and hypertension. In a March 2020 rating decision, the Regional Office (RO) granted service connection for PTSD, but denied the Veteran's increased rating claim for hearing loss, TDIU, and the service connection claims for OSA, bilateral upper and lower extremity peripheral neuropathy, bilateral lower extremity edema, and hypertension. In response, the Veteran filed a VA Form 10182, received on March 23, 2021, showing disagreement with the denials of a TDIU, and the service connection claims for OSA, bilateral upper and lower extremity peripheral neuropathy, bilateral lower extremity edema, and hypertension. He selected the evidence review lane, in which he acknowledged that the decision on his appeal would be based upon all evidence submitted as of the date of the March 27, 2020 rating decision, as well as any evidence received by VA within 90 days of the receipt of the VA Form 10182. As such, only evidence through June 21, 2021, will be considered. 

The Board notes that VA received medical opinions regarding the Veteran's claims on appeal on June 21, 2021, and will be considered. 

Service Connection

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310 (a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

1. Service connection for OSA is granted.

The Veteran asserts that his OSA is a result of his service-connected PTSD.

The Veteran's post-service medical records show that he underwent a sleep study in 2005, which showed severe OSA. According to a private (non-VA) examiner's opinion in April 2021, the Veteran's condition is more appropriate diagnosed as sleep-disturbed breathing (SDB) as that diagnosis including sleep apnea, but more broadly encompasses the other manifestations present, including central sleep apnea, hypopnea of undetermined original, and mixed obstructive and central apneas. This evidence establishes a current diagnosis. 

The critical question at issue is whether the Veteran's diagnosis is related to his service-connected PTSD. 

The Veteran provided a medical opinion from a private physician, dated April 28, 2021. The physician noted that they reviewed the Veteran's claims file. The physician provided a positive nexus opinion and explained that medical and scientific studies have demonstrated a strong correlation between PTSD and OSA. The physician cited to numerous medical articles and studies and applied those findings to the specific facts of this Veteran's case. For example, the physician reported that data from the cited studies, confirmed a causal nexus for sleep disordered breathing (SBD) in the post-military population is not soft tissue obstruction at rest, but obstruction due to hyperactivity in the central and peripheral nervous system, related to PTSD, causing both sleep disturbance directly, and causing anatomic obstruction due to throat muscle contraction. The physician further explained that part of the mechanism is increased obstruction by tightening of the pharyngeal and hypopharyngeal muscles during nightmares and is partially induced by adrenaline and pituitary hormone releases during the stress of PTSD-related sleep and dreams. 

Here, there is only one competent medical opinion of record, the opinion provided by the private physician in April 2021. Based on their review of the medical evidence of record and their review of the relevant studies regarding how PTSD and OSA interacted with one another, provided a positive nexus opinion. Here, the Board affords the April 2021 private physician's opinion great probative weight because in conjunction of their review of the evidence and their medical expertise, they provided a robust and very thorough explanation of their findings. 

The Board can find no reason to call into question or otherwise discount the probative weight of the private examiner's opinion. The examiner's opinion is clear and unequivocal, and it was based on the relevant information, including the relevant in-service and post-service information. Moreover, the examiner's explanation is understandable, and all inferences appear to follow from the facts and information given. In fact, the examiner gave a cogent and persuasive opinion on the medical questions raised. Importantly, the examiner applied the findings of the medical literature with the specific facts of the Veteran's case. See Monzingo, Monzingo v. Shinseki, 26 Vet. App. 97, 105-06 (2012); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Thus, overall, the examiner's opinion is of great probative weight and establishes why, as a medical matter, a secondary nexus to PTSD in this case is likely. 

Accordingly, service connection for OSA is granted.

2. Service connection for hypertension is granted.

The Veteran asserts that his hypertension either had its onset directly during service, is due to his exposure to Agent Orange, or is secondary to service-connected PTSD. 

At service entrance, his blood pressure was 138/84. This does not correlate with readings taken two or more times on at least three different days with diastolic blood pressure predominantly 90mm. or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160mm. or greater with a diastolic blood pressure of less than 90mm. Hence, the Veteran is presumed sound at service entrance. See 38 C.F.R. § 4.101, DC 7101; Gill v. Shinseki, 26 Vet. App. 386, 391 (2013). A review of the Veteran's STRs does not reveal findings consistent with a compensable rating under Diagnostic Code 7101. 

The April 2021 private physician, however, found that the Veteran's STRs showed readings consistent with a diagnosis of hypertension under the current standards. The physician explained that the Veteran had repeated systolic readings over 130 and occasionally over 140 and diastolic readings over 80. The physician also reported that electrocardiogram (ECG) showed clear hypertensive effect, in the form of intermittent left ventricular hypertrophy (LVH) patterns on ECG that were not due to anatomic LVH, because it did not persist on all examinations. 

The private physician in April 2021 also noted that there was no known family history of hypertension, but acknowledged that information in that regard may be incomplete and hereditary factors may be present. Given those possibilities, the physician reported that the statistical correlation between PTSD and hypertension are strong. The physician opined that given the strong correlation between hypertension and PTSD, in the absence of other strong causal factors indicate that PTSD is the sole or predominant cause of hypertension, in this Veteran. The physician noted that statistical studies have confirmed marked increased incidence of hypertension in individuals with PTSD, and there is also significant improvement in hypertension, that closely parallels the response to PTSD treatment. The physician also noted the National Academy of Science (NAS), Institute of Medicine's Veterans and Agent Orange: Update 11 (2018), which showed a marked increase in hypertension in service members exposed to Agent Orange. The physician did consider whether the Veteran was hypertensive upon entry into service, but explained that the medical evidence of record were insufficient for a diagnosis of hypertension, on entrance. The physician concluded by stating that statistical correlations and causal roles existed between the Veteran's service and the development of hypertension, from PTSD and Agent Orange exposure, which made it more likely than not that the Veteran's active duty service caused his current hypertension. 

Here, the Veteran was not afforded a VA examination. The Board finds that a VA examination is not necessary, however, as the private opinion in April 2021 is probative. The Board can find no reason to call into question or otherwise discount the probative weight of the private examiner's opinion. The examiner's opinion is clear and unequivocal, and it was based on the relevant information, including the relevant in-service and post-service information. Moreover, the examiner's explanation is understandable, and all inferences appear to follow from the facts and information given. In fact, the examiner gave a cogent and persuasive opinion on the medical questions raised. Importantly, the examiner applied the findings of the medical literature with the specific facts of the Veteran's case. Thus, overall, the examiner's opinion is of great probative weight and establishes why, as a medical matter, a nexus to service in this case is likely. See Monzingo, 26 Vet. App. 97, 105-06 (2012); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

Accordingly, service connection for hypertension is granted.

3. Service connection for bilateral lower extremity edema is granted.

The Veteran asserts that his bilateral lower extremity edema is due to his exposure to Agent Orange. 

The evidence of record indicates that the edema is secondary to a service-connected disability. 

The Veteran's post-service medical records shows that he has been diagnosed with bilateral lower leg edema. The Board also notes that VA physicians have attributed the leg edema to his OSA. See VA Treatment Record dated March 27, 2008.

The Veteran provided a medical opinion from a private physician in April 2021. The physician noted that the Veteran's treating physicians attributed the leg edema to his OSA. The physician explained that such a finding was medically reasonable, based on the absence of confirmed heart failure or pulmonary hypertension. The physician also reported that SDBs are a generally accepted causation in medical science. The physician noted that the Veteran did not have congestive heart failure or pulmonary hypertension, and noted that hypertension itself does not result in edema, unless cardiac, renal, or vascular complication was present, none of which have been detected. The examiner considered whether the edema was secondary to PTSD, but concluded that the medical literature had not found an association, making causation to be of a medically low probability. However, considering the evidence of record, the physician agreed with the treating physicians of record, reporting that the OSA resulted in hypoxia, which caused the edema. The physician concluded by stating that the peripheral edema was due to the Veteran's service-connected OSA. 

Here, the Veteran was not afforded a VA examination. The Board finds that a VA examination is not necessary, however, as the private opinion in April 2021 is probative. The Board can find no reason to call into question or otherwise discount the probative weight of the private examiner's opinion. The examiner's opinion is clear and unequivocal, and it was based on the relevant information, including the relevant in-service and post-service information. Moreover, the examiner's explanation is understandable, and all inferences appear to follow from the facts and information given. In fact, the examiner gave a cogent and persuasive opinion on the medical questions raised. Importantly, the examiner applied the findings of the medical literature with the specific facts of the Veteran's case. Thus, overall, the examiner's opinion is of great probative weight and establishes why, as a medical matter, a nexus to SDB (sleep apnea) in this case is likely. See Monzingo, 26 Vet. App. 97, 105-06 (2012); Nieves-Rodriguez, 22 Vet. App. at 304. 

The instant Board decision grants service connection for SDB (sleep apnea). As the probative evidence establishes a secondary relation of the peripheral edema to the now service-connected SDB, service connection is warranted, and the appeal is granted. 

4. Service connection for peripheral neuropathy, left upper extremity.

5. Service connection for peripheral neuropathy, right upper extremity.

6. Service connection for peripheral neuropathy, left lower extremity.

7. Service connection for peripheral neuropathy, right lower extremity.

The Veteran asserts that his bilateral peripheral neuropathy of the upper and lower extremities is due to his exposure to Agent Orange. The Board notes that the March 2020 rating decision acknowledged the Veteran was exposed to herbicide agents, while in Vietnam. Under the AMA, the Board is bound by favorable findings by the AOJ in the absence of evidence of clear and unmistakable error. There is not clear and unmistakable error in the RO's finding as the service personnel records (SPRs), which show service in Vietnam. As such, Agent Orange is presumed. 

A review of the Veteran's STRs shows that he complained of neurologic symptoms. Further, his September 1978 retirement examination showed that upon a neurologic evaluation, showed that DTR's were "-3/-3" in all extremities. As such, the Board concedes that the Veteran showed an in-service incurrence regarding neurologic symptoms in all of his extremities. 

A review of the Veteran's post-service treatment records does not reveal any complaints, treatment, or diagnosis for neuropathy, in any of the extremities. 

The Veteran provided a medical opinion from a private physician in April 2021. The physician noted that a review of the Veteran's STRs showed the presence of peripheral neuropathy during his active duty service, as noted in clinical examinations. The physician opined that those findings were considered diagnostic of generalized peripheral neuropathy. However, the physician also reported that it was unclear whether the neuropathy has persisted since discharge, or if it went into remission. The physician noted that peripheral neuropathies can go into remission, particularly those due to toxin exposure. The physician reported that the in-service medical records confirmed the development of peripheral neuropathy while in service, but noted that there was no clear evidence of a current diagnosis. The physician concluded that if neuropathy is identified on a current or recent examination, it would make it at least as likely as not that its origin was during the Veteran's active duty service. The examiner specified that the evaluations for peripheral neuropathy to date have been "too limited and brief in nature to conclude that full remission has occurred."

This private examiner's opinion is probative. It tends to show that the Veteran had some degree of neurologic symptoms during service, but no evidence of a current diagnosis. In doing so, the examiner cited the lack of evaluations for neuropathy. Generally, it must be clear from an examiner's statements that the examiner has considered "all procurable and assembled data," by obtaining all tests and records that might reasonably illuminate the medical analysis. When the record leaves this issue in doubt, it is the Board's duty to remand for further development. Jones v. Shinseki, 23 Vet. App. 382, 390 (2010).

Here, the April 2021 examiner's opinion indicates that the Veteran may have a peripheral neuropathy diagnosis, but the examiner did not do any testing to rule in or out the diagnosis. Nor do the VA medical records show such a work-up. The Veteran was not afforded a VA examination for his bilateral upper and lower extremity peripheral neuropathy. The Board cannot remand for a new VA examination, however, as there was not a pre-decisional duty to assist error. Prior to when the record closed, there was no evidence of a current diagnosis, as the post-service medical records, during the period on appeal, do not indicate complaints, treatment, or diagnosis of any neuropathy. The April 2021 private opinion did not rule out the possibility that there might be a diagnosis, but the private opinion was not of record before the record closed. The only evidence of record prior to when the record closed was the Veteran's own claim form, which listed this condition. He provided no supporting statements indicating why he believed service connection was warranted, to include whether he might still have any current symptoms of the condition. Thus, it is unclear if his claim was for the symptoms during service or some symptoms after service. The Board finds that his claim form alone, where it only listed the condition without providing any context, is simply insufficient to meet the low threshold for determining if a VA examination was needed. See 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4)(i); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006); see also Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010); Euzebio v. Wilkie, 31 Vet. App. 394 (2019); cf Colantonio v. Shinseki, 606 F.3d 1378, 1381-82 (Fed. Cir. 2010). 

The Board reiterates that it cannot remand these issues for a VA examination because there has been no pre-decisional duty to assist error. 38 C.F.R. § 20.802. The Veteran is encouraged to file a Supplemental Claim if he believes the post-decisional evidence, including the April 2021 private examination or any lay statements he may submit, indicate the presence of a current diagnosis or symptoms of a current diagnosis. 38 C.F.R. § 3.2501.

At this point, however, congress specifically limited entitlement to service connection for a disease or injury to cases where the disease or injury has resulted in a disability. In the absence of proof of present disability there can be no claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992). Here, the Veteran's STRs show the presence of peripheral neuropathy in all of his extremities. However, a review of the Veteran's medical records, during the period on appeal, do not reveal any current neurologic problems. Further, the April 2021 private physician also acknowledged the presence of no current symptomatology. Absent a current diagnosis, or any indication of symptoms that might be associated with such a condition, service connection cannot be granted. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Romanowsky v. Shinseki, 26 Vet. App. 289, 293 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). 

Accordingly, service connection for bilateral peripheral neuropathy of the upper and lower extremities is denied.

REASONS FOR REMAND

TDIU is remanded.

The Board herein above grants service connection for multiple disabilities. The assignment of initial disability ratings and effective dates for these disabilities will directly impact the Veteran's eligibility for TDIU consideration. As such, it is too preliminary to enter a final decision on the TDIU issue, and remand is needed pending this action. 

This is not a predecisional duty to assist error on the RO's part. Rather, this remand is needed to satisfy VA's regulatory duties under 38 C.F.R. § 4.16(a) to consider all service-connected disabilities in determining eligibility for TDIU. This action might have a reasonable possibility of aiding in substantiating the appellant's claim. 38 C.F.R. § 20.802(a).

The matters are REMANDED for the following action:

After assigning initial disability ratings for the now service-connected sleep-disturbed breathing, to include OSA; hypertension; and peripheral edema, undertake any other action needed to address the TDIU. 

 

 

Corey Bosely

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board E. Fu, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.