Citation Nr: AXXXXXXXX
Decision Date: 08/31/21 Archive Date: 08/31/21

DOCKET NO. 210421-154492
DATE: August 31, 2021

ORDER

Entitlement to an initial rating in excess of 30 percent disabling for chronic left pleural effusion with chronic obstructive pulmonary disease (COPD) from January 27, 2020 to June 26, 2020, is denied.

Entitlement to an effective date prior to January 27, 2020, for the grant of service connection for chronic left pleural effusion with COPD is denied.

Service connection for anxiety is denied.

Service connection for headaches is denied.

Service connection for hypertension (HTN) is denied.

Service connection for obstructive sleep apnea (OSA), to include as secondary to service-connected disabilities is granted.

Entitlement to a total disability rating based on individual unemployability (TDIU) is granted.

REMANDED

Entitlement to a compensable evaluation for scars of the anterior trunk from January 27, 2020 to June 26, 2020 is remanded.

FINDINGS OF FACT

1. During the period on appeal, the Veteran's COPD is manifested with a forced expiratory volume (FEV-1) of 60 percent predicted.

2. There is no informal or formal claim seeking service connection for COPD prior to January 27, 2020.

3. The preponderance of the evidence is against finding that the Veteran's anxiety began during active service or is otherwise related to an in-service injury or disease.

4. The preponderance of the evidence of record is against finding that the Veteran has had a headache disability at any time during or approximate to the pendency of the claim.

5. The Veteran's hypertension was not aggravated by active-duty service.

6. The Veteran's OSA was caused and/or aggravated by his service-connected ischemic heart disease (IHD) and chronic left pleural effusion with COPD.

7. The Veteran's service-connected disabilities preclude him from obtaining or maintaining substantially gainful employment.

CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 30 percent disabling for chronic left pleural effusion with chronic obstructive pulmonary disease (COPD) from January 27, 2020 to June 26, 2020 have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.96, 4.97, Diagnostic Codes (DCs) 6604-6845 (2019).

2. The criteria for an effective date prior to January 27, 2020, for the grant of service connection for COPD have not been met. 38 U.S.C. §§ 5107, 5101, 5110 (2012); 38 C.F.R. §§ 3.102, 3.151, 3.155, 3.400 (2019).

3. The criteria for service connection for anxiety are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2019). 

4. The criteria for service connection for headaches have not been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2019).

5. The criteria for service connection for hypertension are not met. 38 U.S.C. §§ 1110, 1112, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2019).

6. The criteria for service connection for OSA as secondary to service-connected IHD and COPD are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.310 (2019).

7. The criteria for a total disability rating based on individual unemployability (TDIU) have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.1, 4.3, 4.10, 4.15, 4.16 (a) (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served active duty in the U.S. Navy from March 1964 to March 1966 and from November 1966 to September 1968.

This case comes before the Board on appeal of AMA rating decisions from June 2020, August 2020, and March 2021.

In the April 2021 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Evidence Submission docket.

Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, as well as any evidence submitted by the Veteran or his representative with, or within 90 days from receipt of, the VA Form 10182. 38 C.F.R. § 20.303.

Increased Rating Claim

Disability evaluations are determined by the application of the Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

To evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where an increase in the level of a disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). Additionally, separate ratings for distinct periods of time, based on the facts may be for consideration. Fenderson v. West, 12 Vet. App. 119 (1999).

As is the case here, hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. The additional code is shown after a hyphen. 38 C.F.R. § 4.27. 

The Board has reviewed all the evidence in the record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate and the analysis will focus on what the evidence shows, or fails to show, as to the claims.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

1. Entitlement to an initial rating in excess of 30 percent disabling for chronic left pleural effusion with chronic obstructive pulmonary disease (COPD) from January 27, 2020 to June 26, 2020.

Here, the Veteran contends that his chronic left pleural effusion with COPD warranted a rating in excess of 30 percent disabling.

The Veteran's service-connected pulmonary disease is evaluated under the provisions of 38 C.F.R. § 4.97, DC 6604, which specifically contemplates the Veteran's diagnosis of Chronic Obstructive Pulmonary Disease (COPD). The Veteran also has a diagnosis of chronic pleural effusion (DC 6845) which is subject to the same rating criteria as COPD under DC 6604.

Under both DC 6604 and 6845, a 100 percent rating is assigned for FEV-1 less than 40 percent predicted; FEV-1/FVC (forced vital capacity) less than 40 percent; DLCO (SB) less than 40 percent predicted; maximum exercise capacity less than 15 ml/kg in oxygen consumption; cor pulmonale (right heart failure); right ventricular hypertrophy; pulmonary hypertension; acute respiratory failure; or outpatient oxygen therapy. 38 C.F.R. § 4.97.

A 60 percent rating is assigned for FEV-1 of 40 to 55 percent predicted; FEV-1/FVC of 40 to 55 percent; DLCO (SB) of 40 to 55 percent predicted; or maximum oxygen consumption of 15 to 20 ml/kg. Id. 

A 30 percent rating is assigned for FEV-1 of 56 to 70 percent predicted, FEV-1/FVC of 56 to 70 percent, or DLCO (SB) of 56 to 65 percent predicted. Id. 

The Board notes that under 38 C.F.R. § 4.96, ratings under diagnostic codes 6600 through 6817 and 6822 through 6847 will not be combined with each other. Instead, a single rating will be assigned under the diagnostic code which reflects the predominant disability with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation. 38 C.F.R. § 4.96. The Board notes that both DCs have identical rating criteria, and no other DC may be employed to rate the Veteran's disability. See Copeland v. McDonald, 27 Vet. App. 333, 337 (2015) (when a condition is specifically listed in the rating schedule, it may not be rated by analogy and should be rated under the diagnostic code that specifically pertains to it).

In the February 2020 VA examination, the Veteran had diagnoses of COPD and left pleural effusion and empyema status post CABG. It was shown that the Veteran required inhalational bronchodilator therapy and inhalational anti-inflammatory medication daily. However, the Veteran underwent pulmonary function test (PFT) in March 2020 after the VA examination. Thus, in a March 2020 addendum, the PFT results were: predicted FVC 59 percent, post FVC 59 percent; predicted FEV-1 58 percent, post FEV-1 60 percent; and predicted FEV-1/FVC 97 percent, post FEV-1/FVC 101 percent. The DLCO (diffusion capacity of the lung for carbon monoxide by single breath method) was 83 percent. The impression was moderately severe obstruction with no meaningful response to bronchodilators, moderate restriction, and normal gas exchange. Importantly, the examiner instructed that the most accurate result is the post FEV-1 that measured 60 percent. 

Based on the March 2020 PFT, the Veteran's chronic pleural effusion with COPD most closely approximated a 30 percent disability rating based on a 60 percent FEV-1. A higher evaluation is not warranted as the PFT did not result in a FEV-1 of 40 to 55 percent; DLCO of 40 to 55 percent predicted; or a maximum oxygen consumption of 15 to 20 ml/kg.

Accordingly, as the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application and the claim must be denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107 (2012); 38 C.F.R. §§ 3.102, 4.3 (2019).

Effective Date Claim

Except as otherwise provided, the effective date of an award of benefits based on an original claim, a claim after final allowance or a claim for an increase, "will be the date of receipt of the claim or the date entitlement arose, whichever is the later." 38 C.F.R. § 3.400 (2019); see also 38 U.S.C. § 5110 (a) (2012); Sears v. Principi, 16 Vet. App. 244 (2002).

Effective on March 24, 2015, VA amended its regulations, effectively eliminating informal claims and requiring a "complete claim" on a form proscribed by the Secretary. See 38 C.F.R. §§ 3.155, 3.160 (2019). However, prior to March 24, 2015, which is the relevant period in this appeal, "any communication or action indicating an intent to apply for one or more benefits under the laws administered by [VA]... may be considered an informal claim. Such informal claim must identify the benefit sought." 38 C.F.R. § 3.155 (a) (2014).

The mere existence of medical records generally cannot be construed as an informal claim; rather, there must be some intent by the claimant to apply for a benefit. Criswell v. Nicholson, 20 Vet. App. 501, 504 (2006). Likewise, the effective date of an award of service connection is assigned not based on the date the disability appeared or the date of the earliest medical evidence demonstrating the existence of such disability and a causal connection to service or a service-connected disability; rather, the effective date is assigned based on consideration of the date that the application upon which service connection was eventually awarded was received by VA. See Lalonde v. West, 12 Vet. App. 377, 382-383 (1999).

2. Entitlement to an effective date prior to January 27, 2020, for the grant of service connection for chronic left pleural effusion with COPD is denied.

Here, the Veteran contends that he is entitled to an effective date of April 9, 2013, for his COPD based on a statement in support where he explained that he underwent a quadruple bypass on September 27, 1999 and developed fluid in his lung that required a second surgery. Three weeks after the lung surgery, the Veteran had fluid trapped on the outside of his lung and developed COPD. His doctor wrote a statement indicating that his lung problems were secondary to his heart disease and the Veteran asked VA to consider this. See April 2013 statement in support. 

The Board finds that the April 2013 statement in support did not express an intent to seek service connection for a lung disability. Rather, the Veteran provided this statement to support his service connection claim for IHD. In an October 2011 statement in support, the Veteran filed a claim for IHD/CAD claiming it under the Agent Orange presumption. Specifically, the statement read "[t]his is a new claim for IHD/CAD claiming as an Agent Orange presumptive...." The Veteran specifically addressed the benefit sought (service connection for IHD) in his 2011 statement in support. Conversely, in the April 2013 statement, the Veteran detailed that his heart condition caused other complications including to his lungs and wanted VA to "recognize this when I am approved for a rating." Based on the Veteran's own statement it is clear that he provided this evidence in support of his claim for IHD, in the hopes that once he was granted service connection, he would receive a higher disability rating due to the complications his heart condition caused. Moreover, the Veteran was not service-connected for IHD at the time of his April 2013 statement, thus secondary service connection would not have been warranted for his lung condition. Furthermore, as discussed above, the effective date of an award of service connection is assigned not based on the date of the earliest medical evidence demonstrating a causal connection to a service-connected disability; rather, the effective date is assigned based on consideration of the date that the application upon which service connection was eventually awarded was received by VA. In this instance, the Veteran properly filed a claim for a "lung condition" that was received by VA on January 27, 2020. See VA 21-526EZ, fully developed claim. 

Based on the foregoing, the Board finds that entitlement to an effective date earlier than January 27, 2020, for the grant of service connection for chronic pleural effusion with COPD is not warranted.

Service Connection

Generally, to establish service connection a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303 (d). 

Service connection may also be granted through the application of statutory presumptions for chronic conditions, which includes hypertension. See 38 C.F.R. §§ 3.303 (b), 3.309 (a) (2019); see also 38 U.S.C. §§ 1112, 1137 (2012). First, a claimant may benefit from a presumption of service connection where a chronic disease has been shown during service. 38 C.F.R. § 3.303 (b). In the alternative, if a chronic disease was not shown in service, but manifested to a degree of 10 percent or more within some specified time after separation from active service, such disease shall be presumed to have been incurred or aggravated in service, even if there is no evidence of such disease during service. 38 U.S.C. §§ 1112, 1137 (2012); 38 C.F.R. § 3.307 (a)(3) (2019). The application of these presumptions operates to satisfy the "in-service incurrence or aggravation" element and establish a nexus between service and a present disability, which must be found before entitlement to service connection can be granted.

Additionally, service connection may be granted on a secondary basis. Secondary service connection may be granted for a disability that is proximately due to, or aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310 (2019). To prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Likewise, the Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence, which it finds to be more persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; not every item of evidence has the same probative value.

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b) (2012).

3. Entitlement to service connection for anxiety

Here, the Veteran contends that he suffers from anxiety that was caused by or incurred during active duty.

The AOJ found that the Veteran had been diagnosed with a disability. Treatment records from the St. Louis VAMC noted a diagnosis of anxiety.

The question in this case is whether a causal relationship or nexus exists between the Veteran's anxiety and his active service.

The Board finds that no causal relationship or nexus exists. There is no favorable medical or lay evidence to show that the symptoms are attributable to the Veteran's anxiety began during his active service.

Specifically, in a December 1966 service treatment record the Veteran complained of nervousness. The examiner noted that the Veteran had a negative history of nervous problems in the past. It was shown that the Veteran heavily drank the night before and went to sleep at 2 a.m. He woke up with a severe headache, nervousness, and generalized malaise. Additionally, the Veteran reported that he vomited that morning. There was no diagnosis or treatment for nervousness, the examiner recommended deferred bed rest. See STRs. The Board notes that the Veteran marked "no" to nervous trouble of any sort during his March 1964 enlistment examination. Moreover, in the November 1966 report of medical history, the Veteran marked "no" to nervous trouble of any sort or any other mental difficulties. Most importantly, the September 1968 discharge examination revealed that the Veteran's psychiatric condition was normal. Essentially, outside of the one instance where the Veteran complained of nervousness, the STRs are silent for any complaints, treatment, or a diagnosis of anxiety or any other mental condition. 

The Board acknowledges the Veteran's contention that his anxiety began or was incurred in service, but the evidence does not support his claim. As discussed above, the Veteran's lone complaint of nervousness occurred after a night of heavy drinking which led to a severe headache, nervousness, and generalized malaise. The examiner recommended bed rest but did not diagnose or treat the Veteran for any mental condition. Moreover, it is clear from the STRs that the Veteran did not have any further complaints of nervousness for the remainder of active service. 

Given the foregoing, the preponderance of the evidence is against finding that the Veteran's anxiety is causally related to active service. Accordingly, as the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application and the claim must be denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2019).

4. Entitlement to service connection for headaches

Here, the Veteran contends that his claimed headache disability was incurred in or related to active service. However, the preponderance of the evidence fails to show a current diagnosis of headaches.

Specifically, the Veteran's STRs are negative for treatments or a diagnosis of headaches. As discussed above, the Veteran had a severe headache after a night of heavy drinking, but the examiner neither treated nor diagnosed the Veteran with a headache disability. In fact, in his separation examination, the Veteran's neurological system was listed as normal. Moreover, there is no evidence of any other complaints of headaches during service. Yet, in a January 2014 treatment record, the Veteran reported "nervous" headaches. However, the examiner did not diagnose the Veteran with a headache condition, as this was the only report of headaches in his treatment records. Records from 2016, 2018, 2019, and 2020 showed that the Veteran denied having headaches. See e.g., 2016-2019 VA treatment records; 2020 VA treatment records. Currently, the Veteran has not been diagnosed with a headache disability.

Importantly, without a current diagnosis, service connection cannot be granted. See Brammer v. Derwinski, 3 Vet. App. 233, 225 (1992) (noting that service connection presupposes a current diagnosis of the claimed disability); see also Chelte v. Brown, 10 Vet. App. 268 (1997) (observing that a "current disability" means a disability shown by competent medical evidence to exist at the time of the award of service connection). 

Accordingly, the Board finds that the evidence of record is against a finding of service connection for headaches. As the preponderance of the evidence is against the Veteran's claim, the benefit of doubt doctrine is not applicable. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

5. Entitlement to service connection for hypertension

For VA compensation purposes, the term "hypertension" means that the diastolic blood pressure is predominantly 90 mm. or greater, or systolic blood pressure is predominantly 160 or more. 38 C.F.R. § 4.104, DC 7101 n.1 (2017). A diagnosis of hypertension "must be confirmed by readings two or more times on at least three different days." Id. The requirement of multiple blood pressure readings to be taken over multiple days as specified in Note (1) of DC 7101 applies to confirming the existence of hypertension. Gill v. Shinseki, 26 Vet. App. 386, 391 (2013).

Here, the Veteran contends that his hypertension was caused by or aggravated by service. Based on the evidence, the Board disagrees.

The AOJ found that the Veteran was diagnosed with hypertension based on records from the St. Louis VAMC.

Thus, the question in this case is whether a causal relationship or nexus exists between the Veteran's HTN and his active service.

The Board finds that the Veteran's HTN was neither caused nor aggravated by active service. Specifically, the Veteran's STRs are silent for any complaints, treatment, or a diagnosis of hypertension. In fact, STRs fail to show blood pressure readings that would support a diagnosis of hypertension. The Veteran had blood pressure readings of 126/70, 138/80, 140/82, and 140/84, among other readings. However, during the enlistment examination, the Veteran marked "yes" to a history of high or low blood pressure. Yet, there was no indication during the Veteran's service that his blood pressure was high or low. Besides blood pressure readings, there was no mention of the Veteran's blood pressure to support a diagnosis of hypertension. See STRs. During the Veteran's separation examination, his blood pressure was 140/84 with no impression or diagnosis of hypertension. 

Moreover, there is no evidence on record that shows the Veteran's HTN is related to his active-duty service, or evidence that the Veteran's HTN was diagnosed within a year of his discharge.

Given the foregoing, the preponderance of the evidence is against finding that the Veteran's HTN is causally related to or aggravated by active service. Accordingly, as the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application and the claim must be denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2019).

6. Entitlement to service connection for obstructive sleep apnea (OSA), to include as secondary to service-connected disabilities.

Here, the Veteran contends that his OSA is secondary to his service-connected disabilities. 

The AOJ found that the Veteran had a current diagnosis of obstructive sleep apnea based on treatment records from the St. Louis VAMC.

Thus, the question in this case is whether a causal relationship or nexus exists between the Veteran's OSA and his active service and/or secondary to his service-connected disabilities.

The Board finds that there is medical evidence to support the Veteran's contention that his OSA was caused or aggravated by his COPD and IHD.

Specifically, in the March 2021 private medical opinion, Dr. S.E. opined that it was as likely as not that the Veteran's service-connected ischemic heart disease and chronic left pleural effusion with COPD, as well as his obesity, have caused his obstructive sleep apnea. Dr. S.E. explained that research shows that sleep apnea is a common disorder associated with cardiovascular disease. He added that data suggests a high prevalence of obstructive sleep apnea in middle-aged and elderly patients with coronary artery disease, based on a medical treatise "[a]n independent association between obstructive sleep apnea and coronary artery disease." Dr. S.E. continued that research has shown that OSA syndrome and COPD are two diseases that often coexist within an individual. He explained that it is known that overlap patients present more nocturnal desaturation than patients with either OSA or COPD alone. In patients with overlap syndrome, sleep disordered breathing is associated with upper and lower airway obstruction and a reduction in respiratory drive. Dr. S.E. went on to explain that CPAP use may help in patients with coexistent COPD and OSA.

The Board finds Dr. S.E.'s opinion to be competent, credible, and highly probative. Dr. S.E. reviewed the pertinent evidence, accounted for the Veteran's lay statements, examined the Veteran, and provided an opinion based on the evidence and medical principles.

Accordingly, the preponderance of evidence supports a finding that the Veteran's OSA was caused and/or aggravated by his service-connected COPD and IHD. 38 C.F.R. § 3.310. The appeal is granted.

TDIU Claim

A TDIU rating may be granted upon a showing that the Veteran is unable to secure or follow a substantially gainful occupation due solely to impairment resulting from his service-connected disabilities. See 38 C.F.R. § 4.16 (a) (2019). There are minimum disability rating percentages that must be shown for the service-connected disabilities, alone or in combination, to even qualify for consideration for a TDIU award under § 4.16(a). Indeed, if there is only one such disability, it must be rated at 60 percent or more; if instead there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. Id. 

The United States Court of Appeals for Veterans Claims (CAVC) has indicated that the unemployability question, or the veteran's ability or inability to engage in substantial gainful activity, must be looked at in a practical manner and that the crux of the matter rests upon whether a particular job is realistically within the capabilities, both physical and mental, of the appellant. See Moore v. Derwinski, 1 Vet. App. 356 (1991). The central inquiry is "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19 (2019); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

"Substantially gainful" employment is employment that is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides. See Moore v. Derwinski, 1 Vet. App. 356, 358 (1991) (adding that the definition of substantially gainful employment suggests a living wage). Marginal employment is not considered substantially gainful employment. See 38 C.F.R. § 4.16 (a); see also Moore, 1 Vet. App. at 358 ("The ability to work only a few hours a day or only sporadically is not the ability to engage in substantially gainful employment.").

The fact that a veteran is unemployed or has difficulty finding employment does not alone warrant assignment of a TDIU, as a high rating itself establishes that his or her disability makes it difficult for her to obtain and maintain employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). Rather, the evidence must show that he is incapable "of performing the physical and mental acts required" to be employed. Id. at 363; 38 C.F.R. § 4.16 (a). Thus, the central question is whether a veteran's service-connected disabilities alone are of sufficient severity to produce unemployability, and not whether a veteran could find employment. Id. Consideration may be given to a veteran's education, training, and special work experience, but not to his or her age or to impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19.

7. Entitlement to a total disability rating based on individual unemployability (TDIU)

Here, the Veteran contends that his service-connected disabilities preclude him from obtaining or maintaining substantially gainful employment. 

The AOJ found that the Veteran is not working and had been unemployed since 1999. Additionally, the AOJ found that the Veteran's service-connected disabilities meet the schedular criteria for entitlement to individual unemployability. The Veteran has a combined rating of 70 percent or more with two or more disabilities, and at least one disability ratable at 40 percent or more.

Therefore, the question in this case is whether the Veteran's service-connected disabilities preclude him from obtaining or maintaining substantially gainful employment.

The Board finds that the evidence supports the Veteran's contention that his service-connected disabilities warrant TDIU. 

Specifically, in the March 2021 report, Dr. S.E. explained that the Veteran was service-connected for internal derangement of the right wrist with degenerative joint disease (DJD), IHD, scars, and chronic left pleural effusion with COPD. Dr. S.E. opined that it is as likely as not that the combination of pain and limitations caused by the Veteran's service-connected impairments prevent him from being able to work since at least the date of his claim. Dr. S.E. explained that the Veteran's chronic left pleural effusion with COPD further limits his ability to perform substantially gainful employment. Dr. S.E. explained that his opinion is based on the Veteran's service-connected impairments alone and did not include non-service-connected impairments. Dr. S.E. stated that the Veteran last worked in maintenance and was not working due to a mutual agreement with his last employer. 

After consulting with the Veteran, Dr. S.E. found that he would be able to walk for 15 minutes, slowly and unassisted, due to his heart condition. He was unable to lift or carry more than 10 pounds due to his wrist pain. Dr. S.E. explained that the Veteran would be required to miss work or leave early three or more days per month due to the pain and limitations from his heart condition and wrist particularly, would need more than one additional break per day aside from normally scheduled morning, lunch, and afternoon breaks so he could lie down, recline, stretch, etc., and for more than three days per month he would not stay focused for at least seven hours of an eight-hour workday due to pain, extra needed breaks, and fatigue. Dr. S.E. added that due to his shortness of breath and pain, the Veteran often has difficulty concentrating and staying focused. Likewise, because of his heart condition, the Veteran is constantly fatigued, and naps on a daily basis.

The Board notes that the Veteran's wrist disability precludes him from fully moving his right wrist. The Veteran explained that he has flare-ups of his wrist that would cause it to be frozen and unable to move it or use it for two days at a time. The Veteran reported that he had trouble moving the wrist repetitively and was unable to make a fist with his right hand. See April 2017 VA examination. The Veteran added that he is able to perform most choirs independently but mostly uses his left hand. In the December 2019 VA examination, the examiner remarked that the Veteran was last employed in September 1999 at Target performing maintenance. He reported that he had not worked since that time. Importantly, the Veteran reported that since his second wrist surgery from June 2011, he had limited movement to right wrist and would not be able to complete tasks that required repetitive movement of wrist to include using tools such as a screwdriver. The Veteran reported that his wrist would not move in that direction any longer. The examiner added that his right wrist would have minimal impact with sedentary tasks.

In the December 2019 VA examination, the Veteran was shown to have coronary artery disease (CAD), cardiomyopathy, and coronary artery bypass graft. The Veteran explained that he had dyspnea with mild activity such as dressing and showering. He reported that he was not able to complete tasks that required physical labor due to his dyspnea with mild exertion. Again, the examiner remarked that this condition would have minimal impairment with sedentary tasks.

Moreover, in the February 2020 VA examination, the Veteran reported that he worked mostly as a custodian/maintenance person. He reported that he was no longer able to complete jobs/tasks that require physical activity due to shortness of breath with mild exertion. Similarly, the examiner remarked that his lung condition would have minimal impairment completing sedentary tasks.

Based on the foregoing, it is clear that the Veteran's service-connected disabilities would impair his ability to obtain or maintain physically demanding employment. Importantly, the Veteran's vocational experience has been limited to maintenance work at TJ Maxx and Target. Additionally, the Veteran completed high school but did not attend college and did not have any other education or training. Although the Veteran's disabilities would not significantly impair sedentary employment, based on his vocational experience and education, it is not practical to assume that the Veteran could obtain or maintain substantially gainful employment in a sedentary position. As discussed above, CAVC has indicated that the unemployability question, or the veteran's ability or inability to engage in substantial gainful activity, must be looked at in a practical manner and that the crux of the matter rests upon whether a particular job is realistically within the capabilities, both physical and mental, of the appellant. See Moore v. Derwinski, 1 Vet. App. 356 (1991). 

As such, the Board finds that the Veteran's service-connected disabilities preclude him from obtaining or maintaining substantially gainful employment. The appeal is granted.

REASONS FOR REMAND

Entitlement to a compensable evaluation for scars of the anterior trunk from January 27, 2020 to June 26, 2020 is remanded.

Here, the Board finds that a pre-decisional duty to assist error was committed in failing to provide an adequate examination report to evaluate the Veteran's anterior trunk scars. Specifically, in the March 2020 VA examination, it was shown that the Veteran had three scars to left lateral side. One scar measured 15cm, another one beneath it at 12cm and small scars inferior to the above scars measuring 2 by 2 cm, 3 by 1cm, and another 3 by 1 cm. During this examination (conducted for COPD evaluation) the examiner noted that the scars were painful or unstable. However, in the February 2020 scars examination, the examiner indicated that none of the scar were painful or unstable. Moreover, it is unclear which scars were painful and/or unstable. Diagnostic Code 7804 provides different disability evaluations based on the number of scars that are painful or unstable; thus, it is pertinent to identify which of the scars were painful and/or unstable.

Based on the foregoing, a remand to correct this pre-decisional duty-to-assist error is warranted. On remand, an addendum should be obtained to determine the severity of the Veteran's scars.

The matters are REMANDED for the following action:

1. Obtain an addendum to determine the current severity of the Veteran's anterior trunk scars. The need for another examination is left to the discretion of the medical professional offering the examination report. A copy of this REMAND must also be provided to the VA examiner. All necessary tests and studies should be accomplished, and all clinical findings reported in detail.

 

 

KRISTI L. GUNN

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board I. Umo, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.